IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No. 09-cv-01712-REB

JOHN GERALD TRUJILLO,

      Applicant,

vs.

PAM PLOUGHE, Warden, CTCF, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

### ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

**Blackburn, J.**

This matter is before me on the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** ("Application") [#8][1] filed on September 14, 2009, by Applicant John Gerald Trujillo.  Respondents filed an Answer to Application for Writ of Habeas Corpus ("Answer") [#36], and Applicant filed a Traverse [#42].

After reviewing the pertinent portions of the record in this case including the Application, the Answer, the Traverse, and the state court record [#27], I conclude that the Application should be denied.

### I.  Background

Applicant originally was charged in the District Court of Jefferson County, Colorado, in three separate cases with multiple crimes concerning the rape and kidnapping of three different women.  Before trial, the cases were consolidated in Case

---

[1][#8] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

No. 00CR2531.  Following a jury trial in the District Court of Jefferson County, Colorado, Applicant was convicted of second degree kidnapping, attempted first degree sexual assault, third degree sexual assault, two counts of second degree kidnapping of a victim of sexual assault, two counts of first degree sexual assault, attempted second degree murder, attempted sexual assault, and sexual assault by unwanted sexual contact by the actual application of physical force or violence.  At the conclusion of the trial, Applicant was found to be a sexually violent predator and was sentenced to a term of 120 years to life in prison.

Applicant's convictions were affirmed on direct appeal.  ***See People v. Trujillo***, No. 01CA1673 (Colo. App. Apr. 14, 2005) (unpublished).  On October 17, 2005, the Colorado Supreme Court denied certiorari review, and on April 25, 2006, Applicant filed a motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c), in which he asserted several ineffective assistance of counsel claims.  On April 27, 2007, the trial court, in a written order, denied the Rule 35(c) motion.  The written order was affirmed on appeal.  ***See People v. Trujillo***, No. 07CA1456 (Colo. App. Sept. 18, 2008) (unpublished decision) [# 16-10].  The Colorado Supreme Court denied certiorari review of the Rule 35(c) motion on February 17, 2009.  [# 16-12].

Applicant filed the original Application for Writ of Habeas Corpus on July 20, 2009, and was instructed by the Court to file an Amended Application that is in keeping with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court and that goes beyond notice pleading, which amended application he filed on September 14, 2009.

The Court then conducted a preliminary review and dismissed three subparts to Claim Two.  The two claims for relief that remain are a violation of Applicant's Fifth Amendment right to remain silent and a violation of his right to effective assistance of counsel.  In Claim Two, seven sub-parts remain at issue including trial counsel's failure to (a) depose Detective Vince Berrera; (b) obtain exculpatory DNA evidence of one of the victims that would have proven the victim lied to police about her rape; (c) interview prosecution witnesses and obtain their criminal histories; (f) object to the prosecution's pretrial motion regarding the stabbing of one of the victims prior to her meeting Applicant; (h) make a closing argument and point out the contradictions and inconsistencies in the prosecution's case; (i) object to an all-white, predominately female jury; and (j) call two rebuttal witnesses to testify.[2]

## II.  Analysis

A.  Standard of Review

I must construe the Application liberally because Applicant is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I cannot act as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

---

[2]  In the Answer, Respondents maintain that Subpart j of Claim Two is procedurally defaulted.  I considered Respondents' Motion for Reconsideration, which addressed this issue, and denied the Motion on September 10, 2010.  Again, as I stated in the September 10, 2010, Order, none of the grounds warranting a motion for reconsideration was circumstantiated by Respondents.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court

cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one.

*See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671.

In addition,

evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  It is not an unreasonable application of clearly established Federal law for a state

> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786,  --- U.S. --- (Jan. 19, 2011) (internal

quotation marks and citation omitted).  The Court "must determine what arguments or

theories supported or . . . could have supported[ ] the state court's decision" and then

"ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*

"Even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable."  *Id.* (citation omitted).  "Section 2254(d) reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems, not

a substitute for ordinary error correction through appeal."  *Id.* (citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671.

Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a
> federal court, a state prisoner must show that the state
> court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

I review claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).  Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations

are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 131 S. Ct. at 784.  ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").  Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas applicant's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.

In other words, I "owe deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.

"[T]his 'independent review' should be distinguished from a full de novo review of the applicant's claims." *Id.*  Likewise, I apply the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).  If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

B.  Claim One

Applicant alleges in his first claim that the trial court violated his Fifth Amendment right to remain silent.  Applicant contends that the trial court consolidated the three separate cases charging him with rape and ruled that if he elected not to testify regarding any allegations, the prosecution would not be able to cross-examine him.  Applicant further contends that contrary to this ruling, the court allowed the prosecution to cross-examine him beyond the subject matter of his direct examination, which infringed on his right either to testify or to remain silent.

The CCA provided the following factual background for this claim:

Defendant was originally charged in three separate cases.  Before trial, the prosecution moved to consolidate the cases.  It also moved to admit evidence of all the incidents as similar transactions to show "common plan, scheme, design, and modus operandi, motive, intent, identity and to refute the potential defenses of consent and recent fabrication."

Defendant opposed the motions.  He told the court that he wanted to testify in the case involving L.D. to establish that the encounter was consensual, but that he would not testify in the other cases.

The trial court ruled that the similar transaction evidence satisfied the test for admissibility under **People v. Spoto**, 795 P.2d 1314 (Colo. 1990), and would be admitted for the purposes cited by the prosecution. The court also granted the motion to consolidate. However, to ensure that defendant was not prejudiced, it ruled that the prosecution would "not be able to cross examine him on the allegations as to which [he] chooses not to testify."

Defendant sought reconsideration of the court's rulings. The trial court declined to alter its ruling regarding similar transaction evidence, but agreed that the case involving L.D. would be tried separately from the other two cases.

The prosecution then sought reconsideration of the latter ruling. After noting that evidence of all three incidents would be admitted in any event under the trial court's "similar transactions" ruling, the district attorney stated that, to alleviate any prejudice to defendant from consolidation, he would not impeach defendant with his prior felony conviction if defendant testified.

The trial court denied the prosecution's motion to reconsider, stating that it was "sticking with my previous ruling." However, the court told defense counsel that it would try all the cases together with counsel's consent if counsel decided to accept the district attorney's offer. Defense counsel responded: "Judge, I appreciate that. I have not had an opportunity to discuss that with Mr. Trujillo and about all of the ramifications. I will do that over the weekend."

The record does not reflect any further proceedings regarding consolidation; however, trial began shortly thereafter on the three consolidated cases.

At trial, when defendant told the court that he wanted to testify only regarding the L.D. matter, the district attorney asked the court to advise defendant that he could be cross-examined on the other matters pursuant to the court's rulings. Defense counsel objected to any cross-examination beyond the scope of defendant's direct testimony. The district attorney agreed that certain facts of the other two cases would be outside the scope of cross examination, but argued that he was entitled to bring out similarities among the offenses to impeach defendant's credibility and rebut his defense of consent. After further colloquy, the court advised defendant that he could be cross-examined about "facts that are similar" among the three cases, and defendant reaffirmed his intention to testify.

Defendant testified on direct examination that he and L.D. had had consensual sexual intercourse, and he testified to facts that could have given L.D. reason to frame him because of his previous work as a confidential drug informant.

The prosecution's cross-examination consisted primarily of questions regarding the L.D. incident. However, after confirming that defendant was claiming that L.D. had set him up, the district attorney elicited testimony that defendant had told the police the other two victims were also setting him up. The district attorney also established that the other victims were similar in age to L.D. and, like L.D., had been drinking when defendant contacted them at a bar, had been physically assaulted, and had ridden in defendant's truck.

*Trujillo*, No. 01CA1673 at 1-4.

The CCA went on to analyze the claim as follows:

We also reject defendant's related contention that the trial court violated the law of the case doctrine by altering prior rulings regarding the permissible scope of cross-examination.

Prior relevant rulings by a trial court in the same case are generally to be followed by that court unless doing so would result in error or unless changed conditions make the prior ruling no longer sound. However, when applied to a court's power to reconsider its own prior rulings, law of the case is a discretionary rule of practice because it merely expresses the practice of courts generally to refuse to reopen what has been decided. **People v. Vialpando**, 954 P.2d 617 (Colo. App. 1997); **see People ex rel. Gallagher v. District Court**, 666 P.2d 550 (Colo. 1983).

Thus, the trial court here had discretion to modify its prior rulings if changed conditions made the prior rulings no longer sound. However, we do not agree with defendant that the trial court in fact did so.

Review of the record establishes that, throughout the pretrial and trial proceedings, the trial court was consistently concerned about protecting defendant from prejudice by not allowing cross-examination regarding the other incidents except to the extent those incidents had already been ruled admissible, that is, to show modus operandi and the like and to rebut the defense of consent. The admissibility of the evidence for those purposes has not been separately challenged by defendant on appeal.

Consistent with its pretrial rulings, the court did not allow the prosecutor to cross-examine defendant regarding the other two cases except for the purposes for which evidence of those cases had previously been ruled admissible.  Further, when defendant offered direct testimony about "being set up" to support his consent defense, it was neither inconsistent with the court's prior rulings nor contrary to permissible rules regarding the scope of cross-examination to allow the prosecutor to bring out on cross-examination that defendant had also claimed that he was set up in the other two cases.

Thus, this case is significantly different from ***People v. Gay***, 24 P.3d 624 (Colo. App. 2000), on which defendant relies.  In ***Gay***, reversal was warranted because the trial court forgot its earlier ruling and inadvertently ruled to the contrary, causing prejudice to the defendant. Such is not the case here.

For similar reasons, we reject defendant's contention that his constitutional rights were violated because the trial court's "alteration" of its ruling placed him in the untenable situation of having to choose between his right to testify and his right to remain silent.  As noted above, the court did not "alter" its ruling, and defendant's decision to testify was made following a lengthy discussion and advisement informing him that he could be cross-examined about similarities among the three cases if he elected to testify.  ***Cf. Apodaca v. People***, 712 P.2d 467 (Colo. 1985) (trial court improperly burdened defendant's right to testify in his own defense when it refused to rule, in advance of defendant's decision to testify, on whether prosecution could use his prior rape conviction as impeachment evidence).

***Id.*** at 6-8.

Applicant argues that he impermissibly was forced to choose between his right to

remain silent and his right to speak on his own behalf and exculpate himself.  In

***McGautha***, the Supreme Court explained that although "a defendant may have a right,

even of constitutional dimensions, to follow whichever course he chooses, the

Constitution does not by that token always forbid requiring him to choose.  The

threshold question is whether compelling the election impairs to an appreciable extent

any of the policies behind the rights involved." ***McGautha v. California****, 402 U.S. 183,

213 (1971), *vacated in part on other grounds by sub nom. Crampton v. Ohio*, 408

U.S. 941 (1972).  By waiving his rights, a defendant is subject to cross-examination "on

matters reasonably related to the subject matter of his direct examination."  *Id.* at 215.

In *Crampton*, the Court cited to many examples where the defendant was forced

to choose between competing rights.  *See Brown v. United States,* 356 U.S. 148

(1958) (one who takes the stand in his own behalf cannot then claim the privilege

against cross-examination on matters reasonably related to the subject matter of his

direct examination); *Spencer v. Texas,* 385 U.S. 554, 561, (1967) (a defendant who

takes the stand in his own behalf may be impeached by proof of prior convictions or

otherwise inadmissible evidence); *United States v. Calderon,* 348 U.S. 160, 164 n. 1

(1954) (a defendant whose motion for acquittal at the close of the State's case is denied

must decide whether to stand on his motion or put on a defense, with the risk that in so

doing he will bolster the State's case enough to support a verdict of guilty); *Williams v.

Florida,* 399 U.S. 78 (1970) (upheld a Florida law requiring a defendant to choose

between abandoning his alibi defense or giving the State both an opportunity to prepare

a rebuttal and leads from which to start).

Here, Applicant complains that the trial court allowed cross-examination in one of

the three consolidated cases that was beyond the subject matter of his direct testimony.

Applicant maintains that at no time during direct examination did he address allegations

made by the victims named in his other two criminal cases or allude to these individuals

or their motives in naming him as an offender in those cases.  As a result, Applicant

contends that he was forced to provide a defense to those allegations in violation of his

Fifth Amendment rights.

Nothing Applicant asserts in his Application or Traverse demonstrates a violation of his Fifth Amendment rights.  First, Applicant fails to address the admissibility of the victims' allegations based on modus operandi and rebuttal to his consent defense as is allowed under Colo. R. Evid. 404(b).  Second, the CCA's factual determinations are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  I have reviewed the transcript of the trial court as it pertains to this issue, in particular Applicant's decision to testify and the cross-examination of Applicant, and find as follows.

During a pretrial hearing, the trial court determined there were striking similarities between all three cases that support a similar transaction and allow for use to establish a common plan, a scheme, a design, identity, modus operandi, motive, and intent. *Trujillo*, Case No. 00CR2531, Trial Tr. Vol. V, Mar. 9, 2001, at 51.  The trial court also found that the striking similarities were enough to refute an allegation of consent or an allegation of recent fabrication.  *Id.*  Furthermore, the trial court determined that the similar transactions related to a material fact, were independently significant to show Mr. Trujillo's bad character, had probative value, and were not substantially prejudicial compared with the probative value.  *Id.* at 52.  Finally, the trial court found that no cross-examination would be allowed "on any allegations as to which Mr. Trujillo chooses not to testify."  *Id.* at 53.

This Court finds nothing by the trial court that suggests the court reversed any prior ruling regarding the admissibility of any similar transactions for the purpose of refuting an allegation of consent.  The trial court considered a subsequent motion to sever by defendant that was granted, and the prosecution's motion to reconsider the

motion to severe, during which no change was made to the trial court's initial ruling on admissibility of any similar transactions. *See id.*, Vol. X and Vol. IX at 100-26.

In fact, during the discussion on the motion to severe, the prosecution reiterated the rule set forth by the trial court during the previous pretrial hearing that similar transactions could be addressed if Applicant testified. Vol. IX at 110-11. At this time, trial counsel agreed that the trial court had determined the similar transactions were admissible. Vol. IX at 116. The trial court indicated during the discussion regarding the severance issue that the admissibility of the similar transactions was not a concern. Vol. IX at 118. The trial court also ruled prior to Applicant's direct examination, and at the time of his right to testify advisement by the court, that the prosecution on cross-examination could "go into similarities and modus operandi," but the prosecution must be careful because the cross-examination on similarities could be "very close to error in this case." Vol. XVIII at 96.

The trial court instructed Applicant regarding the prosecution's ability to ask him about facts that were similar in each case, and Applicant stated he understood. Vol. XVIII at 97. Trial counsel added to the record that he had explained to Applicant he had three options: (1) not to testify; (2) testify subject to the court's ruling; and (3) advise the court that he desired to testify but could not because of the scope of the examination the court was permitting. Vol. XVIII at 98. Applicant then responded "yes" to the court's question as to whether he wished to testify. *Id.*

Finally, during the prosecution's cross-examination, Applicant was asked about his allegation that the victims "set him up" in retaliation for informing on a drug dealer. *Id.* at 132-155. He further was asked about certain similarities, including (1) the age of

14

each of the three victims; (2) if the victims had been drinking and if he met each of them at a bar; (3) if his truck was involved in each of the attacks; and (4) if each victim was physically assaulted. *Id.* The trial court determined the questioning was admissible as a matter of witness credibility based on the similarity of the other sexual assaults. *Id.* at 130-31.

Based on the above findings, the trial court did not waiver from the first ruling it gave on the admissibility of similar transactions. Furthermore, Applicant was well informed of the consequences of his testifying and had the option to object to the trial court's ruling on the scope of examination allotted to the prosecution, but he declined to object. Also, the subject matter of the cross-examination was within the similarities requirements. Applicant's decision to testify and the cross-examination that took place subsequent to his testifying, as set forth above, did not impair to an appreciable extent any of the policies behind the rights involved. *See McGautha*, 402 U.S. at 213.

This Court, therefore, finds that the CCA decision regarding Applicant's Fifth Amendment right to remain silent or to testify did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Claim One lacks merit and will be dismissed.

C.  Claim Two

Applicant alleges seven separate claims of ineffective assistance of counsel in Claim Two.  It was clearly established when Applicant was convicted that a defendant has a right to effective assistance of counsel.  ***See Strickland v. Washington***, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  ***See id.*** at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  ***Id.*** at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  ***Id.***  It is an applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  ***See id.***

Under the prejudice prong, an applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  ***Id.*** at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  ***Id.***  In assessing prejudice under ***Strickland*** the question is whether it is reasonably likely the result would have been different. ***Richter***, 131 S.Ct. at 791-92.  "The likelihood of a different result must be substantial, not just conceivable."  ***Id.*** (citing ***Strickland***, 466 U.S. at 693.)

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the ***Strickland*** standard was unreasonable.  This is different from asking whether defense counsel's performance fell below ***Strickland's*** standard," which is the question we would ask if the claim came to us "on direct review of a criminal conviction

in a United States district court." *Richter,* 131 S. Ct. at 785. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

(a) Depose Detective Vince Berrera

Applicant asserts that trial counsel was ineffective in not deposing Detective Vince Berrera. Applicant contends that Detective Berrera had exculpatory evidence regarding the relationship between the three victims and the drug dealers against whom Applicant acted as an informant. With respect to this claim, the CCA found as follows:

> We reject defendant's argument that his defense counsel was ineffective because he failed to obtain information from a drug task force regarding his alleged involvement as a confidential drug informant.

> The record indicates that defense counsel requested and obtained the information. Counsel also introduced evidence that the person defendant identified as being the target of his work as an informant had been convicted of a drug offense. And defendant does not specify what additional information there may have been or how it could have altered the result of his trial. *See* [*State of Colo. v.*] *Mills*, 163 P.3d [1129, 1133 (Colo. 2007)] (defendant must show there is a reasonable probability that, but for counsel's errors, the result would have been different); *see also* [*State of Colo. v. Zuniga*], 80 P.3d [965, 973 (Colo. App. 2003)] (a trial court may deny postconviction relief where the allegations of ineffective assistance of counsel are merely conclusory, vague, or lacking in detail).

> Accordingly, the trial court did not err in denying defendant's motion for postconviction relief on this basis.

*Trujillo*, No. 07CA1456 at 8-9.

"The duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case." **Williamson v. Ward**, 110 F.3d 1508, 1514 (10th Cir. 1997) (internal quotation marks omitted).  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." **Id.** (internal quotation marks omitted).  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." **Strickland**, 466 U.S. at 690-91.

Here, the CCA found trial counsel did request and obtain information and introduce evidence that Applicant was an informant and as a result of his work at least one of the drug dealers was convicted of a drug offense.  Applicant contends that the information trial counsel received regarding his actions as an informant was incomplete and the important information was not provided, which included that (1) he showed Detective Barrera the bars where the drug dealers hung-out; and (2) he made several phone calls setting-up drug deals and purchased drugs while wearing a wire.  Applicant further asserts that Detective Barrera's testimony would have included a list of the names of individuals and how they were connected to one another for purposes of showing a motive for setting him up.  Traverse at 6.

Although Applicant contends that Detective Berrera had first-hand knowledge of the connection of the three victims to the drug dealers and that the drug dealers had motive to set him up, he does not state with any specificity what Detective Berrera's

18

testimony would have been.  Applicant does not demonstrate or provide evidence of how the relationship between each of the victims and the individuals against whom he informed was the motivating factor for the victims to undergo the injuries they incurred. His only assertions, although not stated in the Application in this case but in an attachment in his brief on appeal to the CCA, *see* Pre-Answer Resp. App. H at 33-34 [#16-8], are included in an overview he compiled that identifies the relationship of individuals who are friends of or related to the drug dealers against whom he informed. The overview is self-serving and attenuated with respect to how the three victims may have been connected to the drug dealers.  The relationships of the people listed in Applicant's overview does not establish that the victims were motivated to set him up.

As for the information that Applicant claims his counsel did not receive, including his showing Detective Berrera the bars where the dealers frequented and his wearing a wire when he purchased drugs from the dealers, nothing with respect to this information demonstrates the victims were motivated to set him up.

Even if trial counsel was ineffective in not pursuing exculpatory evidence from Detective Barrera, nothing Applicant asserts about trial counsel's lack of investigation of his alleged informant acts shows that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Applicant fails to present clear and convincing evidence to rebut the presumption of correctness applied to the CCA's finding.

There is a reasonable argument for finding that counsel satisfied the ***Strickland*** deferential standard.  ***See Richter***, 131 S. Ct. at 788.  The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim Two, Subpart a, therefore, lacks merit and will be dismissed.

(b) Obtain Exculpatory DNA

Applicant asserts that trial counsel was ineffective in failing to hire a forensic expert to obtain exculpatory DNA evidence from the seat of his truck and to prove that one of the victims lied about the type of vehicle she was in when she allegedly was raped.  Applicant further contends that a forensic expert would have testified regarding the petechia on one of the victim's neck and the age of the injuries she incurred, which would have resulted in proving that the victim lied to the police about being raped. Furthermore, Applicant appears to argue that a forensic expert testifying on his behalf could have dissuaded the jury that a sexual assault took place based on the finding that one of the victim's had no trauma to the vaginal area or anus that is consistent with sexual assault.  With respect to this claim, the CCA found as follows:

> We also reject defendant's argument that his defense counsel was ineffective for failing to have a DNA test conducted on the seat of his pickup truck.

> Defendant claims that if the test had been conducted, it would have shown that one victim's DNA was present on the seat of his personal truck.  According to defendant, this would prove that they had consensual sex and would refute her testimony that defendant was driving his employer's truck and that the rape occurred outside the truck.

> However, such evidence would not prove that the sex was consensual, nor would it necessarily disprove the victim's allegations regarding the rape.  *See* [*State of Colo. v.*] *Long*, 126 P.3d [284, 286 (Colo. App. 2005)] (court may deny postconviction motion if defendant's factual allegations fail to state a constitutional claim for relief).

20

> Further, defendant did not allege that he told his trial counsel prior to trial that he and the victim had consensual sex in his personal vehicle or that her DNA could be found there. *See* [*State of Colo. v.*] *Rodriguez*, 914 P.2d [230, 295 (Colo. 1996)] (defense counsel's failure to investigate or present mitigating evidence does not constitute ineffective assistance of counsel when the essential and foundational information required to trigger such an investigation is withheld from the defendant's counsel by the defendant himself).
>
> Accordingly, the trial court did not err in denying defendant's motion for postconviction relief on this basis.

*Trujillo*, No. 07CA1456 at 6-7.

Applicant's claim is speculative. Even if trial counsel had sought testimony by a forensic expert and determined that one of the victim's DNA was found in his personal truck it does not demonstrate that the sex he had with that victim was consensual or that she lied about the rape. Trial counsel, also, was able on cross-examination of the prosecution's emergency doctor to present to the jury that no vaginal trauma was found on one of the victims. Vol. No. XIV at 21-22. With respect to the age of the injuries to one of the victims, the issue is found to lack merit as discussed below under Subpart (f).

Even if trial counsel was ineffective in not pursuing a forensic expert to testify, nothing Applicant asserts about trial counsel's failure to do so shows that but for counsel's unprofessional errors, the result of the proceeding would have been different. Applicant has failed to present clear and convincing evidence to rebut the presumption of correctness applied to the CCA's finding.

There is a reasonable argument for finding that counsel satisfied the *Strickland* deferential standard. *See Richter*, 131 S. Ct. at 788. The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States and did not result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  Claim Two, Subpart b, therefore, lacks merit and will be dismissed.

(c) Interview Prosecution Witnesses Regarding Criminal Histories

Applicant asserts that trial counsel failed to interview the prosecution's witnesses

and obtain criminal histories, which could have been used to impeach the credibility of

these witnesses.  Applicant contends that one of the victims had a felony conviction for

methamphetamine possession and all three of the victims are drug addicts, which

makes them less credible.  With respect to this claim, the CCA found as follows:

> We are also not persuaded by defendant's argument that his
> defense counsel was ineffective by failing to investigate defendant's
> claims and the prosecution witnesses' criminal histories. . . .
>
> With respect to defendant's second assertion, his counsel
> attempted to interview the prosecution's witnesses before trial, and he
> obtained the witnesses' criminal histories from the prosecution.
> Furthermore, because the jury was already aware of one of the victim's
> criminal record, defendant fails to show how the result of his trial would be
> different if his counsel had done what defendant suggests.  ***See Mills***, 163
> P.3d at 1133 (defendant must show there is a reasonable probability that,
> but for counsel's errors, the result would have been different).
>
> Accordingly, the trial court did not err in denying defendant's motion
> for postconviction relief on this basis.

***Trujillo***, No. 07CA1456 at 11-12.

Applicant's claims are speculative.  He fails to assert what information would

have been available that trial counsel did not obtain through his investigation, which

would have supported a finding that each of the victims were criminals and drug addicts.

Trial counsel during the cross-examination of the three victims, in an attempt to

discredit their memories of what happened on the night of the assault, did question each

one extensively about their drinking habits and made clear that each one had frequented several bars on the nights the sexual assaults took place and had several alcoholic drinks.  *See* Trial Tr. Vol. XII at 103-51, Trial Tr. Vol. XIII at 222-36, and Trial Tr. Vol. XVI at 45-106.

Furthermore, during direct examination, the prosecution questioned one of the victims regarding her felony conviction for possession of a controlled substance and noted that she received three years probation for the offense.  Trial Tr. Vol XIII at 157. Also, during direct examination the same victim stated that she had a DUI in 1990 and that she did a line of cocaine with Applicant on the night that he assaulted her.  *Id.* at 142 and 157.  Other than the felony conviction and the DUI admitted by one of the victims, Applicant fails to provide any evidence supporting his conclusory statement that each of the victims were drug addicts or convicted criminals.

Nonetheless, the overwhelming evidence of the injuries to each of the women and the other witnesses' statements who saw the victims after the attacks made it unbelievable that each of these women would go to such extremes to set up Applicant.

Nothing Applicant asserts about trial counsel's failure to interview the prosecution's witnesses and to obtain criminal histories shows that but for counsel's unprofessional errors, the result of the proceeding would have been different. Applicant fails to present clear and convincing evidence to rebut the presumption of correctness applied to the CCA's finding.

There is a reasonable argument for finding that counsel satisfied the *Strickland* deferential standard.  *See Richter*, 131 S. Ct. at 788.  The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim Two, Subpart c, therefore, lacks merit and will be dismissed.

(f) Object to Prosecution's Pretrial Motion

Applicant asserts that trial counsel was ineffective in conceding to a pretrial motion by the prosecution that precluded evidence of a stab wound incurred by one of the victims separate from and prior to the Applicant's alleged assault on the victim. Applicant contends that because trial counsel conceded to this motion only the stab wound was precluded and any other injuries incurred by the victim when she was stabbed were attributed to his assault.  Applicant further contends that trial counsel should have hired a medical expert to confirm that not only the stab wound but also other injuries incurred by that victim happened days before his alleged assault. Applicant concludes that had a medical expert testified regarding the injuries the jury would have known that the victim was lying and that Applicant did not brutally and sexually attack her.  With respect to this claim, the CCA found as follows:

> We reject defendant's argument that his defense counsel was ineffective because he confessed four of the prosecution's pretrial motions.
>
> As an initial matter, we note that in his postconviction motion, defendant only raised the issue of his trial counsel's ineffective assistance with respect to one pretrial motion: the prosecution's motion in limine to preclude evidence that a victim had been stabbed in a fight a few days before her encounter with defendant.  Therefore, we will only address defendant's claim with respect to that particular motion.  *See People v. Blankenship*, 119 P.3d 552,557 (Colo. App. 2005) (declining to consider issues not raised in postconviction motion).

Defendant has failed to show how his trial counsel's confession of the pretrial motion regarding the stabbing states a constitutional claim for relief. The victim's prior stabbing was not attributed to defendant, and defendant has failed to show how the evidence is relevant to whether he raped that victim.

Accordingly, the trial court did not err in denying defendant's motion for postconviction relief on this basis. *See Long*, 126 P.3d at 286 (court may deny postconviction motion if defendant's factual allegations fail to state a constitutional claim for relief).

*Trujillo*, No. 07CA1456 at 7-8.

Applicant's prior injuries claim also is speculative. Applicant does not demonstrate or provide any evidence as to what other injuries the victim incurred at the time she was stabbed that still would have been apparent at the time she was assaulted. Furthermore, in the motion in limine filed by the prosecution to establish the stab wound as nonrelevant and inadmissible evidence, the prosecution established that the stabbing took place not just days prior but one to two weeks before the assault by Applicant. *See Trujillo*, No. 00CR2531, State Court Flat File at 178-79. Moreover, the emergency room doctor who examined the victim the night of the assault attributed to Applicant testified regarding several of the victim's injuries. Trial Tr. Vol. XIV at 4-18. The testimony indicated the injuries he treated were contusions, redness on her cheek, scratches on her back, a small cut on her right elbow, a two-by-four inch abrasion on her left forearm, and soft-tissue injuries along the side her neck. *Id.* at 10-13. The doctor also stated that she had muscle tremors and appeared to be frightened, anxious, and tearful. *Id.* at 9-10 and 14. The sex-assault examining nurse testified that she felt a bump on the back of the victim's head. *Id.* at 147-48.

Applicant fails to submit any evidence that would support a finding that a medical expert testifying on his behalf could have identified any of the above described injuries as occurring prior to the assault by Applicant.  Nothing Applicant asserts about trial counsel's failure to object to the prosecution's pretrial motion regarding the stabbing of one of the victim's prior to the assault shows that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Applicant fails to present clear and convincing evidence to rebut the presumption of correctness applied to the CCA's finding.

There is a reasonable argument for finding that counsel satisfied the ***Strickland*** deferential standard.  ***See Richter***, 131 S. Ct. at 788.  The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim Two, Subpart f, therefore, lacks merit and will be dismissed.

(h) Make a Closing Argument

Applicant asserts that trial counsel failed to make a closing argument and identify all the contradictions and inconsistencies in the prosecution's case.  He further contends that he was prejudiced because of trial counsel's silence.  With respect to this claim, the CCA found as follows:

> We also reject defendant's argument that his defense counsel was ineffective because he failed to make a closing argument.

> Defendant has cited no authority, nor have we found any, indicating that defense counsel's decision not to make a closing argument, without

more, constitutes ineffective assistance of counsel. *Cf. Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) ("it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel").

Further, considering the overwhelming evidence supporting defendant's convictions, defendant has not shown how his counsel's decision to waive closing argument altered the result. *See Mills*, 163 P.3d at 1133 (defendant must show there is a reasonable probability that, but for counsel's errors, the result would have been different). He merely asserts that his counsel could have used the closing argument to point out "holes" in the prosecution's case; but defendant fails to indentify [sic] any of the alleged holes. *See Zuniga*, 80 P.3d at 973 (conclusory allegations not sufficient).

Accordingly, the trial court did not err in denying defendant's motion for postconviction relief on this basis.

*Trujillo*, No. 07CA1456 at 10-11.

"[I]t is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel." *See Fox*, 200 F.3d at 1296 (citing *Nguyen v. Reynolds*, 131 F.3d 1340, 1350 (10th Cir. 1997); *see also United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) ("failure to present an opening statement itself is not ineffective assistance"); *United States v. Miller*, 907 F.2d 994, 1000 (10th Cir. 1990)). Although Applicant did not identify in the § 2254 Application what specific contradictions or inconsistent statements trial counsel should have countered in a closing argument, Applicant attached to his opening brief on appeal to the CCA a list of contradictions and inconsistent statements that he had compiled and identified as issues trial counsel should have addressed in a closing argument. *See* Pre-Answer Resp. App. H at 36-37 [#16-8].

27

On review of the list, which includes eighteen alleged contradictory statements made during trial, I find nothing that shows but for counsel's unprofessional errors the result of the proceeding would have been different.  Applicant's argument that had trial counsel presented these inconsistencies a reasonable doubt would have been created in the jurors' minds is an overstatement of the effect such a closing statement would have had on the jurors.  Again, as stated above, the testimony by the victims and witnesses who encountered each of the victims after the assault was overwhelming evidence against Applicant.  Furthermore, each of the pieces of evidence or testimony Applicant identifies on the list was presented on direct examination and addressed by trial counsel on cross-examination.  Nothing presented by Applicant indicates that trial counsel's strategy to not present a closing argument was ineffective.  Applicant has failed to present clear and convincing evidence to rebut the presumption of correctness applied to the CCA's finding.

There is a reasonable argument for finding that counsel satisfied the ***Strickland*** deferential standard.  ***See Richter***, 131 S. Ct. at 788.  The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim Two, Subpart h, therefore, lacks merit and will be dismissed.

(i) Object to "All-White," Predominate Female Jury

Applicant asserts that trial counsel's failure to object to the all-white jury of two men and twelve women was improper conduct.  Applicant also contends that women are more biased in a sexual assault case and that he is entitled to a jury of his own peers or fellows.  He further asserts that the jury selection was a ***Batson*** violation.  With respect to this claim, the CCA found as follows:

> Defendant, who is Hispanic, also argues that his defense counsel was ineffective because he failed to object to the composition of the jury, which did not include any non-white members and included only two men. We are not persuaded.
>
> Defendant provides no authority to support his assertion that women are per se biased against a defendant when a woman is the victim in the case.  Nor does defendant claim that non-whites were systematically excluded from the pool.
>
> Thus, because defendant failed to allege specific facts showing that his counsel's performance was deficient with respect to the jury selection, the trial court did not err in denying defendant's motion for postconviction relief on this basis.  ***See Zuniga***, 80 P.3d at 973 (a trial court may deny postconviction relief where the allegations of ineffective assistance of counsel are merely conclusory, vague, or lacking in detail).

***Trujillo***, No. 07CA1456 at 9-10.

Applicant's jury claim is conclusory and vague and without basis.  Although Applicant did not specifically raise a ***Batson*** claim in his Rule 35(c) opening brief on appeal, he did assert a Sixth Amendment violation of his right to a verdict by impartial and indifferent jurors.  However, even if Applicant intended to raise a ***Batson*** claim in his Rule 35(c) postconviction motion, ***Batson*** violations occur when a prosecutor uses his peremptory challenges purposefully to discriminate against a racial group.  ***See***

***Batson v. Kentucky***, 476 U.S. 79, 89 (1986).  Applicant does not claim this happened in the jury selection in his criminal proceeding.

His only claims are that there are enough minorities living in Jefferson County to assemble a racially and gender balanced jury and that he was prejudiced by the twelve white women that served on the jury.  The racial composition of a jury alone, however, does not demonstrate a cognizable constitutional claim.  ***See Battle v. Workman***, 353 F. App'x 105, 109 (10th Cir. 2009) (unpublished).  Applicant's jury composition claim, therefore, is meritless.  ***See id.*** at 109.

Based on the above findings, Applicant fails to present clear and convincing evidence to rebut the presumption of correctness applied to the CCA's finding.  There is a reasonable argument for finding that counsel satisfied the ***Strickland*** deferential standard.  ***See Richter***, 131 S. Ct. at 788.  The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim Two, Subpart i, therefore, lacks merit and will be dismissed.

(j) Call Two Rebuttal Witnesses to Testify

Applicant asserts that trial counsel failed to call two witnesses to testify that he did not have scratches on the side of his face, in rebuttal to the prosecution witnesses who claimed he did have scratches on his face on August 3, 2000, several days after one of the sexual assaults.  With respect to this claim, the CCA found as follows:

Defendant argues that his counsel should have introduced testimony of certain police officers, as well as a police report that was made when police contacted defendant regarding a report of possible domestic violence.  According to defendant, this evidence would have shown that three prosecution witnesses were wrong when they testified that he had scratches on his face and body shortly following one of the assaults.

However, defendant has not specified who the police officers are, whether they are amenable to process, and whether they would in fact testify that he had no injuries at the relevant time.  *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994) (defendant claiming ineffective assistance of counsel because of the failure to call certain witnesses must show who the witnesses might be, their willingness to testify or their amenability to process, and the substance, credibility, and admissibility of their testimony).

Even if defendant's trial counsel could have introduced such evidence, defendant's allegations fail to show how, but for the inaction, the result would have been different.  *See Mills*, 163 P.3d at 1133 (defendant must show there is a reasonable probability that, but for counsel's errors, the result would have been different).  To the contrary, defense counsel secured the testimony of two witnesses who stated that defendant had no visible injuries during the time in question.

Accordingly, the trial court did not err in denying defendant's motion for postconviction relief on this basis.

*Trujillo*, No. 07CA1456 at 4-6.

Applicant fails to present clear and convincing evidence to rebut the presumption of correctness applied to the CCA's finding.  Even though Applicant now has identified the rebuttal witnesses, he still fails to state their willingness to testify or their amenability to process, and the substance, credibility, and admissibility of their testimony.  Furthermore, as found by the CCA, trial counsel presented two witnesses who did testify that Applicant did not have scratches on his face at the time in question.

There is a reasonable argument for finding that counsel satisfied the *Strickland* deferential standard.  *See Richter*, 131 S. Ct. at 788.  The CCA decision regarding this

31

claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim Two, Subpart j, therefore, lacks merit and will be dismissed.

### III. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#8 ] filed on September 14, 2009, by Applicant John Gerald Trujillo is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**; and

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

4.  That the Motion to Hold Respondents in Contempt of Court for Failure to Comply with a Court Order [#37] is **DENIED** as moot.

Dated June 17, 2011, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge