**FILED**
**United States Court of Appeals**
**Tenth Circuit**

### UNITED STATES COURT OF APPEALS

#### FOR THE TENTH CIRCUIT

**April 6, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

JOHN GERALD TRUJILLO,

        Petitioner - Appellant,

v.

PAMELA PLOUGHE, Warden, CTCF, et al.,

        Respondents - Appellees.

No. 11-1436

### ORDER

Before **BRISCOE**, Chief Judge, **MURPHY**, and **MATHESON**, Circuit Judges.

This matter is before the court on appellant's petition for rehearing and suggestion for rehearing en banc.  The petition is granted for the limited purpose of amending the previously filed order.   The amended order, filed nunc pro tunc to February 7, 2012, is attached to this order.

The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service.  As no member of the panel and no judge in regular active service on the court requested that the court be polled, that petition is also denied.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

**February 7, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

JOHN GERALD TRUJILLO,

       Petitioner - Appellant,

v.

PAMELA PLOUGHE, Warden, CTCF;
THE ATTORNEY GENERAL OF THE
STATE OF COLORADO,

       Respondents - Appellees.

No. 11-1436
(D.C. No. 1:09-CV-01712-REB)
(D. Colo.)

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **BRISCOE**, Chief Judge, **MURPHY,** and **MATHESON**, Circuit Judges.

John Gerald Trujillo, a state prisoner appearing pro se,[1] seeks a certificate of

appealability ("COA") to appeal the district court's denial of his 28 U.S.C. § 2254

application for habeas corpus. *See* 28 U.S.C. § 2253(c)(1)(A) (providing no appeal may

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Trujillo is proceeding pro se, we construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

be taken from a final order disposing of a § 2254 petition unless the petitioner first

obtains a COA).  We deny Mr. Trujillo's request and dismiss this matter.

## I.      BACKGROUND

Mr. Trujillo was charged in three separate Colorado state cases with multiple

crimes involving the rape and kidnapping of three different women occurring on January

6, 1999, September 30, 1999, and July 30, 2000.  After a Colorado state trial court

consolidated the three cases, a jury convicted Mr. Trujillo of second-degree kidnapping,

attempted first-degree sexual assault, third-degree sexual assault, two counts of second-

degree kidnapping of a victim of sexual assault, two counts of first-degree sexual assault,

attempted second-degree murder, attempted sexual assault, and sexual assault by

unwanted sexual contact by the actual application of physical force or violence.  The state

court sentenced Mr. Trujillo to a term of 120 years to life in prison.

The Colorado Court of Appeals ("CCA") affirmed the judgment, and the Colorado

Supreme Court denied certiorari review.  Mr. Trujillo filed a motion for post-conviction

relief pursuant to Colo. R. Crim. P. 35(c), asserting numerous claims of ineffective

assistance of counsel.  The state trial court denied Mr. Trujillo's motion, and the CCA

affirmed.  The Colorado Supreme Court denied certiorari review.

Mr. Trujillo filed an application for writ of habeas corpus in federal district court

on July 20, 2009.  Four days later, a magistrate judge ordered Mr. Trujillo to file an

amended application because Mr. Trujillo had not identified specific claims for relief.

The magistrate judge also found that Mr. Trujillo's application did not comply with Fed.

R. Civ. P. 8(a) because it did not contain "short and plain statements."  ROA, vol. 1 at 75.

Mr. Trujillo filed a written objection to the magistrate judge's order, claiming he needed additional pages to present his claims and that amending his application would present a financial burden.  The district court denied Mr. Trujillo's objection, noting that Mr. Trujillo's application was 68 pages and that his claims were "repetitive and unnecessarily verbose and confusing."  *Id.* at 84.

Mr. Trujillo filed an amended application on September 14, 2009.[2]  He alleged two claims—(1) a violation of his right to decide whether to testify or remain silent, a claim arising from the consolidation of the three cases, and (2) a violation of his right to effective assistance of counsel.  His ineffective assistance of counsel claim included ten subclaims: (a) failure to depose Detective Vince Berrera to obtain exculpatory evidence about the connection between the three victims and the drug dealers whom Mr. Trujillo had implicated while working as a confidential informant; (b) failure to obtain exculpatory DNA evidence from one of the victims that would have proven that she lied to the police about being raped; (c) failure to interview prosecution witnesses and obtain their criminal histories; (d) failure to employ a medical forensic expert to testify about the nature and age of the victims' injuries; (e) failure to call Mr. Trujillo's counselor as a witness to testify about Mr. Trujillo's fear of being home alone; (f) conceding to the prosecution's motion in limine to exclude evidence of the stabbing of one of the victims a

---

[2] As a threshold matter, Mr. Trujillo argues that he was prejudiced by having to amend his § 2254 application.  When it denied this amended application, the district court stated that many of his claims were vague and lacking in specificity.  Mr. Trujillo argues that the district court would not have denied his claims if it had considered his original application.  [id]  But, after reviewing Mr. Trujillo's filings, we conclude that he was afforded full opportunity to allege and argue each of his ineffective assistance of counsel subclaims and was thus not prejudiced by having to file an amended application.

few days before she met Mr. Trujillo; (g) failure to impeach the testimony of certain prosecution witnesses; (h) failure to make a closing argument; (i) failure to object to the all-white jury consisting of 12 women and two men (two alternates); and (j) failure to call two important rebuttal witnesses to testify.

On January 13, 2010, the district court dismissed three of Mr. Trujillo's subclaims for ineffective assistance of counsel—(d), (e), and (g)—as procedurally barred.  On June 16, 2011, the district court denied Mr. Trujillo's application for writ of habeas corpus with prejudice and found that there was "no basis on which to issue a certificate of appealability."  ROA, Vol. 2 at 496.

Mr. Trujillo filed an application for a COA limited to his claims of ineffective assistance of counsel.

## II.    DISCUSSION

To receive a COA, Mr. Trujillo must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make that showing, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (quotations omitted).  When a district court dismisses a § 2254 petition on procedural grounds without reaching the underlying constitutional claim, a petitioner is entitled to a COA only if he shows both that reasonable jurists would find it debatable whether he had stated a valid constitutional claim and debatable whether the district court's procedural ruling was correct.  *Id.* at 484.

4

In evaluating whether Mr. Trujillo has carried his burden, we undertake "a preliminary, though not definitive, consideration of the [legal] framework" applicable to each of his claims. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). Mr. Trujillo is not required to demonstrate that his appeal will succeed, but he must "prove something more than the absence of frivolity or the existence of mere good faith." *Id.* (quotations omitted).

To prevail on a § 2254 petition in the district court, a petitioner must show that the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).

A state court's decision is contrary to clearly established federal law when "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] . . . on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an unreasonable application of clearly established federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the . . . case." *Id.*

## A. *Subclaims (d), (e), and (g) as Procedurally Barred*

The district court found that three of Mr. Trujillo's subclaims were procedurally barred. These subclaims were: (d) failing to employ a medical forensic witness to testify that the victims' injuries were days rather than hours old, (e) failing to present the expert

testimony of Mr. Trujillo's counselor, and (g) failing to impeach the credibility of certain

prosecution witnesses during cross-examination.

A state prisoner generally may not raise a claim for federal habeas corpus relief

unless he "has exhausted the remedies available in the courts of the State."  28 U.S.C.

§ 2254(b)(1)(A); *see also Magar v. Parker*, 490 F.3d 816, 818 (10th Cir. 2007)

("Congress has emphatically directed us that habeas petitioners seeking relief in federal

court must first exhaust all available state court remedies . . . .").  A claim is exhausted

when it has been "fairly presented" to the state court.  *Wilson v. Workman*, 577 F.3d

1284, 1294 (10th Cir. 2009) (en banc) (quotations omitted).  To be "fairly presented," the

substance of the claim must be raised in state court and the allegations and supporting

evidence must offer the state courts a fair opportunity to apply the controlling legal

principles to the facts bearing upon the constitutional claim.  *Id.*

In addition, in 28 U.S.C. § 2254 proceedings, federal courts "do not address issues

that have been defaulted in state court on an independent and adequate state procedural

ground, unless the petitioner can demonstrate cause and prejudice or a fundamental

miscarriage of justice."  *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007)

(quotations omitted).   To show cause, a petitioner must demonstrate that "some objective

factor external to the defense impeded [his] efforts to comply" with state law.  *Murray v.

Carrier*, 477 U.S. 478, 488 (1986).  To show prejudice, a petitioner must demonstrate

that he suffered "actual prejudice as a result of the alleged violation of federal law."

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A fundamental miscarriage of justice

provides only "a narrow exception to the cause requirement where a constitutional

violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quotations omitted).

We note that, in Colorado, ineffective assistance of counsel claims are generally considered in post-conviction collateral proceedings rather than on direct appeal. *See Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) ("In light of the considerations potentially involved in determining ineffective assistance, defendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal."); *People v. Thomas*, 867 P.2d 880, 886 (Colo. 1994) ("[T]his court has expressed a preference for having ineffective assistance of counsel claims brought in Crim. P. 35(c) proceedings."). Mr. Trujillo raised his ineffective assistance claims in state court through post-conviction collateral attack.

### 1. *Subclaim (d)*

The only mention that Mr. Trujillo made of subclaim (d) in his brief to the CCA challenging the trial court's denial of post-conviction relief was his attorney's "[f]ailure to call 'expert' witnesses (medical) to testify." ROA, Vol. 1 at 266. The CCA held that "because [Mr. Trujillo] merely lists [this] argument[] without facts, argument, or authority, we do not address [it] here." *Id.* at 322. The district court decided that Mr. Trujillo's failure to articulate an argument before the CCA rendered subclaim (d) procedurally defaulted. The district court further found that Mr. Trujillo had not established cause and prejudice or that a failure to consider the claim would result in a fundamental miscarriage of justice.

7

Mr. Trujillo appears to argue that there was cause for the procedural default because he was limited by Colo. App. R. 28(g)'s 30-page limit and was thus unable to present his argument to the CCA. But "pro se parties [must] follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quotations omitted); *see also Indiana v. Edwards*, 554 U.S. 164, 185 (2008) ("A *pro se* defendant may not . . . fail to comply with relevant rules of procedural . . . law.") (quotations omitted); *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1145 (10th Cir. 2004) ("[W]e have never interpreted [our precedent] to give litigants—even pro se litigants—*carte blanche* to disregard congressionally established procedural rules."). The page limit does not constitute cause for Mr. Trujillo's procedural default.

Further, Mr. Trujillo has not shown that our refusal to consider this claim would result in a fundamental miscarriage of justice. Our review of the record fails to show that Mr. Trujillo could succeed on a claim of actual innocence.

We conclude that reasonable jurists could not debate with the district court's holding that subclaim (d) was procedurally barred.

**2.  *Subclaim (e)***

Mr. Trujillo mentioned his attorney's failure to introduce testimony from his counselor in his post-conviction motion to the Colorado trial court under the heading "Conduct of Counsel Resulting in a Sham Defense." Tr. Vol. 2, at 560. As with subclaim (d), Mr. Trujillo simply listed this issue in his brief to the CCA challenging the trial court's denial of post-conviction relief and did not provide a supporting argument. The CCA refused to address Mr. Trujillo's "sham defense" argument for the same

8

reasons that it refused to consider his argument on subclaim (d).  Thus, the district court found that subclaim (e) was procedurally defaulted.

Mr. Trujillo makes the same arguments here on subclaim (e) as to cause and prejudice as he does for subclaim (d).  For the same reasons we articulated for subclaim (d), we conclude that reasonable jurists could not debate that this issue was procedurally barred.

### 3.  *Subclaim (g)*

In subclaim (g), Mr. Trujillo argues that his attorney was ineffective because he did not impeach the credibility of prosecution witnesses at trial.  The district court held that he did not exhaust this claim in the state courts.  In his brief to the CCA challenging the state trial court's denial of his motion for post-conviction relief, Mr. Trujillo argued that his attorney failed to interview prosecution witnesses and obtain criminal histories. He also briefly added that his attorney's failure to investigate prevented effective cross-examination of prosecution witnesses.  This latter point became subclaim (g) in Mr. Trujillo's § 2254 petition.

The CCA did not specifically address the cross-examination issue.  It did address the failure to investigate issue and held that Mr. Trujillo failed to demonstrate that his attorney provided ineffective assistance of counsel.

The district court dismissed Mr. Trujillo's subclaim (g) because the ineffective cross-examination issue was not exhausted in the state courts.  The court explained that Mr. Trujillo presented this § 2254 claim in a different manner than he did in his brief to the CCA.  Although Mr. Trujillo's limited reference to the cross-examination issue before

the CCA raises concern about exhaustion, we conclude it is debatable whether the district court's exhaustion conclusion is correct.[3]

Nonetheless, when a district court dismisses a § 2254 petition on procedural grounds without reaching the underlying constitutional claim, to receive a COA the petitioner must also show that reasonable jurists would find it debatable whether he had stated a valid constitutional claim. *Slack*, 529 U.S. at 484. "In reaching this determination, we will not delve into the merits of the claim, but instead will determine only whether the petitioner has facially alleged the denial of a constitutional right." *Fleming v. Evans*, 481 F.3d 1249, 1259 (10th Cir. 2007) (quotations omitted).

Mr. Trujillo has failed to allege a constitutional violation. His allegation of ineffective cross-examination is conclusory and unsupported by sufficient facts or argument showing that, but for his counsel's alleged ineffective interrogation of witnesses at trial, there is a reasonable probability he would not have been convicted, one of the critical requirements of a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cummings v. Sirmons*, 506 F.3d 1211, 1233-34 (10th Cir. 2007) (conclusory allegations are not sufficient to satisfy *Strickland*). Therefore, we deny COA on subclaim (g).

## B. *Ineffective Assistance of Counsel*

---

[3]The district court also found that subclaim (g) was procedurally defaulted because Colo. R. Crim. P. 35(c)(3)(VI) and (VII) generally prohibit successive post-conviction Rule 35 motions and two such motions were filed. Although two Rule 35 motions from Mr. Trujillo appear in the record with different date stamps, these motions are identical, and both have the same date listed next to Mr. Trujillo's signature. Further, the CCA appears to have considered only one Rule 35 motion. Therefore, whether this issue was procedurally defaulted also is debatable.

To establish a claim of ineffective assistance of counsel, a petitioner must show both (1) constitutionally deficient performance and (2) resulting prejudice by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the case would be different. *See Strickland*, 466 U.S.at 687.   If the applicant is unable to show either "deficient performance" or "sufficient prejudice," the ineffective assistance claim necessarily fails. *Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010).

"[O]ur review of counsel's performance under the first prong of *Strickland* is a highly deferential one." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quotations omitted), *cert. denied*, 132 S. Ct. 763 (2011).   "[W]e indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and presume that counsel's conduct is sound strategy. *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quotations omitted), *cert denied*, 132 S. Ct. 292 (2011).   "To be deficient, the performance must be outside the wide range of professionally competent assistance. . . . [I]t must have been completely unreasonable, not merely wrong." *Hooks*, 606 F.3d at 723 (citation omitted) (quotations omitted).

To show prejudice, the applicant must establish that "counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable." *Id.* at 724 (quotations omitted).   "Establishing a reasonable probability of a different outcome requires something less than a showing counsel's deficient conduct more likely than not altered the outcome in the case.   Instead, a reasonable probability is one sufficient to

11

undermine confidence in the outcome." *Id.* (citation omitted) (quotations omitted).

"[M]ere speculation is not sufficient to satisfy this burden." *Byrd*, 645 F.3d at 1168.

1. ***Subclaim (a):  Failure to Depose or Call Detective Berrera to Testify***

Mr. Trujillo argues that his attorney failed to provide effective assistance of counsel because he did not depose or call Detective Berrera to testify.  He claims that Detective Berrera would have explained the connection between the three victims and certain drug dealers whom Mr. Trujillo implicated while working as a confidential informant.  This testimony, he asserts, would have proved to the jury that the victims had a motive to set him up and stage the charged assaults.

The record indicates that Mr. Trujillo's attorney investigated this connection between the drug dealers and the victims and presented some of this information at trial. Mr. Trujillo's attorney subpoenaed Detective Berrera and attempted to obtain the confidential informant reports relating to Mr. Trujillo's work.  Further, Mr. Trujillo testified as to the connection between the victims and the drug dealers.

Because Mr. Trujillo's attorney investigated the connection between the victims and the drug dealers, and because Mr. Trujillo has failed to prove that, but for his attorney's failure to depose and call Detective Berrera to testify, the result of his trial would have been different, we conclude that reasonable jurists could not debate whether the district court properly rejected this claim under the *Strickland* standards.

2.   *Subclaim (b):  Failure to Obtain Exculpatory DNA Evidence from the Seat of Mr. Trujillo's Truck*

Mr. Trujillo claims that his attorney should have obtained and presented DNA evidence from Mr. Trujillo's personal truck.  One of the victims testified at trial that Mr. Trujillo offered her a ride in his red or blue work truck, drove her to a secluded area, and, after a struggle, raped her.  Mr. Trujillo, on the other hand, testified that he had consensual sex with the victim in his white, personal pickup truck.

Mr. Trujillo argues that there was DNA evidence from one of the victims on the seat of his personal white pickup truck and that this evidence would have proved that the victim was lying when she said that Mr. Trujillo gave her a ride in a red or blue work truck.  This evidence, he contends, would also prove that the victims framed him for the attacks.  Mr. Trujillo explained this theory at trial when he testified that he and the victim had consensual sex, after which the victim saved the condom, spread Mr. Trujillo's DNA on her pants and body, and then roughed herself up, all in an attempt to frame Mr. Trujillo.

As the Supreme Court explained in *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment."  466 U.S. at 691.  "An attorney is not required to investigate all leads as long as the decision not to pursue a particular lead

is reasonable under the circumstances." *Smith v. Workman*, 550 F.3d 1258, 1270 (10th Cir. 2008) (quotations omitted).

As the district court and the CCA noted, counsel's failure to test Mr. Trujillo's personal pickup truck for DNA evidence was not unreasonable.  Apart from Mr. Trujillo's contention, there is no indication that this DNA evidence existed.  Moreover, even if this evidence did exist, it would not prove that Mr. Trujillo and the victim had consensual sex or that the incident in the secluded area did not occur.  Further, the overwhelming weight of the trial evidence goes against Mr. Trujillo's theory that he was framed.  For these reasons, we conclude that reasonable jurists could not debate that the district court properly rejected this ineffectiveness claim based on the *Strickland* standards.

**3.  *Subclaim (c):  Failure to Interview Prosecution Witnesses and Obtain Criminal Histories***

Mr. Trujillo argues that his attorney should have interviewed the prosecution's witnesses and obtained their criminal histories to impeach their credibility.  He claims that all the victims were drug addicts and that his attorney should have presented this information at trial.

The record, however, reflects that Mr. Trujillo's attorney attempted to interview the victims and requested criminal histories from the prosecution.  The record also reflects that one of the victims testified that she had a prior felony conviction for drug possession and that she ingested cocaine with Mr. Trujillo on the night of the assault.

Mr. Trujillo fails to provide any evidence that the other victims had criminal records or used drugs in the past.

The foregoing undermines any claim that either *Strickland* factor was met. Accordingly, we conclude that reasonable jurists could not debate that the district court properly rejected this claim.

**4.   *Subclaim (f):  Conceding a Pretrial Motion Regarding the Stabbing of One of the Victims a Few Days Before the September 30, 1999 Incident with Mr. Trujillo***

Mr. Trujillo argues that his attorney should not have conceded the prosecution's motion in limine seeking to exclude evidence that one of the victims had been stabbed a few days before she was allegedly raped by Mr. Trujillo.  He claims that had this evidence been introduced, it would have proved that the victim's injuries were days old at the time of the alleged rape and that Mr. Trujillo could not have caused them.

Mr. Trujillo does not state what injuries the victim sustained from the stabbing, nor does he explain how they would have been the same as the injuries that medical personnel observed on the night of the alleged rape.  The testimony of the medical personnel who treated the victim on the night of the alleged rape strongly suggested that the victim's injuries were immediate.  The paramedic who first examined the victim testified that her arms and legs shook for approximately 30 to 45 seconds, which he thought was a potential tonic/colonic seizure.  The emergency room doctor who treated her testified that she was transported to the hospital on a backboard with pain in her head, neck, and forearm, and that she was frightened and anxious.  He also testified that he observed the victim's injuries:

> She had several small contusions . . . [that] were an inch to two inches in diameter.  That her neck was tender along the midline . . . .  She had some redness to the side of her cheek and a bunch of scratches to her back.  She had a small cut on her right elbow and then a two-by-four abrasion on her forearm . . . .

Tr. Vol. 14 at 10.  He further testified that although he did not think the shaking episode was a tonic/colonic seizure, he did observe that the victim was having muscle tremors.

Because there was ample testimony at trial regarding the victim's immediate injuries sustained the night of the assault, we conclude that reasonable jurists could not debate that the district court properly dismissed this ineffective assistance claim.

### 5. *Subclaim (h):  Failure to Make a Closing Argument*

Mr. Trujillo argues that he was deprived of effective assistance of counsel because his attorney waived his opportunity to present a closing argument.  He contends that his attorney should have used this opportunity to point out inconsistencies in the prosecution's case.  He also claims that by failing to make a closing statement, his attorney essentially conceded that Mr. Trujillo was guilty.

The Supreme Court has never considered whether failure to give a closing argument constitutes ineffective assistance.  *See Allen v. Lawhorn*, 131 S. Ct. 562, 564 (2010) (Scalia, J., joined by Thomas, J. and Alito, J., dissenting from denial of certiorari) ("[N]one of our cases has ever considered whether the failure to give a closing argument can be considered prejudicial under *Strickland*.").  But we have stated that "it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000).  The record shows that Mr. Trujillo's

attorney actively defended Mr. Trujillo throughout the trial and never conceded Mr.
Trujillo's guilt.

Even if we were to question Mr. Trujillo's attorney's decision to waive closing
argument, Mr. Trujillo has not established that he was prejudiced by this decision.  Based
on the overwhelming weight of the evidence at trial, such an argument would likely not
have changed the outcome of the trial.

For these reasons, we conclude that reasonable jurists could not debate that the
district court properly rejected this claim based on the *Strickland* standards.

### 6.  *Subclaim (i):  Failure to Challenge the Composition of the Jury*

Mr. Trujillo argues that his attorney should have challenged the composition of the
jury, which, including alternates, consisted of twelve women and two men, all of whom
were white.  He claims that the large number of women on the jury made it biased
because this was a sexual assault case.

The Sixth Amendment guarantees a defendant the right to a jury pool consisting of
a fair cross section of the community.  *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).
But "[d]efendants are not entitled to a jury of any particular composition" and the actual
jury need not mirror the community.  *Id.* at 538.  A defendant also does not have a
constitutional right to a "jury composed in whole or in part of persons of his own race."
*Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (quotations omitted).  We are not aware of
contrary authority regarding a jury consisting primarily of women.

Mr. Trujillo appears to be making a *Batson* claim, but he never argues that his
attorney or the prosecution improperly used their peremptory challenges.  Nor does Mr.

Trujillo challenge the composition of the jury pool.  He does not present a cognizable issue relating to the composition of the jury.

For these reasons, we conclude that reasonable jurists could not debate that the district court properly rejected this claim based on the *Strickland* standards.

### 7. *Subclaim (h):  Failure to Call Two Important Rebuttal Witnesses*

Mr. Trujillo argues that his attorney should have called Agent Susan Stephens and Agent James Greer to testify at trial that he did not have visible injuries during the days after one of the incidents even though the victim testified that she had kicked and scratched him.

Three prosecution witnesses testified that Mr. Trujillo had visible injuries after the incident.  The mother of his child testified that he had large scratches on his face and arms.  Additionally, two of Mr. Trujillo's coworkers testified of his injuries—one testified that he had scratches on his face, and the other testified that he had a black eye.  Conversely, Mr. Trujillo's girlfriend and his roommate both testified that he did not have scratches on his face or arms after the alleged incident.

Mr. Trujillo argues that Agents Greer and Stephens would have presented unbiased testimony that he did not have visible injuries after the alleged incident.  He states that Agents Greer and Stephens responded to a domestic violence call at his girlfriend's home less than a week after the incident and prepared a police report indicating that "John [Trujillo] stated that he had no injuries and there was no damage done to his truck."  ROA, Vol. 1 at 40, 65.  According to Mr. Trujillo, if he had scratches

18

on his face or a black eye, the agents would have included that information in their police report.

But this police report appears to be limited to the discrete domestic violence incident and refers only to what Mr. Trujillo himself reported about his injuries, not the officers' observations about any prior injuries that Mr. Trujillo might have had.  Thus, there is no indication that Agent Greer or Agent Stephens would have testified that Mr. Trujillo did not have visible injuries.  Furthermore, Mr. Trujillo's attorney did elicit testimony from two witnesses that Mr. Trujillo did not have visible injuries.

For these reasons, we conclude that reasonable jurists could not debate whether the district court properly rejected this claim.

### 8.  *Other Ineffectiveness Claims*

In his application for COA, Mr. Trujillo mentions other ineffective assistance arguments, such as inconsistencies in testimony that his attorney should have highlighted or testimony that he should have elicited.  But Mr. Trujillo does not fully articulate these arguments, nor does it appear that he fully exhausted them in state court.  In any event, even if Mr. Trujillo had exhausted these arguments, after reviewing the record, we conclude that none of these arguments supports a debatable claim for ineffective assistance of counsel under the *Strickland* standard.

### 9.  *Cumulative Effect*

Mr. Trujillo argues that the cumulative effect of his attorney's errors constitutes ineffective assistance of counsel and that the district court erred in considering each of his claims in isolation.  We disagree.  We have not found Supreme Court precedent holding

that the cumulative effect of a counsel's nonerrors may constitute ineffective assistance. We explained in *United States v. Cox*, 83 F.3d 973, 990 (10th Cir. 2010), that "[c]umulative error analysis evaluates the effect only of errors, not the cumulative effect of nonerrorrs."; *see also Bunton v. Atherton*, 613 F.3d 973, 990 (10th Cir. 2010) ("In any event, the cumulative error doctrine does not apply here because we have not found the existence of two or more actual errors."). Because we reject all of Mr. Trujillo's individual claims for ineffective assistance of counsel, we cannot hold that the cumulative effect of his attorney's conduct was nonetheless ineffective. We conclude that this argument does not support Mr. Trujillo's application for a COA.

## III. CONCLUSION

After reviewing Mr. Trujillo's application for a COA, the district court's orders, and the entire record, we conclude that Mr. Trujillo is not entitled to a COA. We deny his request for a COA and dismiss this matter. We grant Mr. Trujillo's request to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge